## DELAPLAINE *vs.* LAWRENCE.

Under the statute authorizing a surrogate to confirm or vacate a sale of real es-
tate made by an administrator for the payment of the debts of a deceased per-
son, it is competent for the surrogate, where different parcels have been sold,
to confirm the sale in part and vacate it in part: And if, in his opinion, any
one parcel was sold at a price disproportionate to its value, and will produce
ten per cent more on a resale, it is his duty to order a resale of that parcel, al-
though the other parcels were sold for their full value.

Upon judicial sales of real estate it is the duty of the officer conducting them to
sell the property in such parcels as will be best calculated to produce the high-
est aggregate price. *Per* HARRIS, J.

A sale made by an administrator under the order of a surrogate is within this
rule, and he may sell in subdivisions, although the order of sale describes the
property as one parcel.

Whether the decision of a surrogate confirming or vacating an administrator's
sale of real estate, where the question before him was upon the mere weight
of evidence as to the value of the property compared with the price bid, can be
reviewed on appeal, *quere.*

APPEAL from the supreme court, where the case, so far as
necessary to be stated, was this:

John L. Lawrence, administrator of, &c. of Isaac Lawrence,
late of the city of New-York, deceased, applied to the surrogate
of that city and county for an order to sell the real estate of the
decedent to pay debts. An order was made accordingly, direct-
ing the sale of forty-one separate parcels of land, and among
them of a tract known as the Turtle Bay farm. A sale was
had pursuant to the order, and the property was sold in sepa-
rate parcels. The Turtle Bay farm was subdivided before the
sale into 109 lots, which were separately sold, and several of
them were bid off by John F. Delaplaine, the appellant. Other
lots of the same tract were purchased by other persons.

On a return of the proceedings of the administrator to the
surrogate, the confirmation of the sale as to the Turtle Bay
farm was opposed by William Beach Lawrence, one of the heirs
at law of the decedent, and evidence was adduced before the
surrogate tending to show that the aggregate price for which
that farm had been sold was disproportionate to its value. Mrs.

Cornelia B. Lawrence, the widow of the deceased, executed and left with the surrogate an agreement that in the event of a resale of that parcel she would bid for the same a sum exceeding by ten per cent the amount for which it had been sold, together with the expenses of a new sale. To secure that result and the payment of the enhanced price she also gave her bond with proper security approved by• the surrogate. The surrogate thereupon made an order confirming all the sales except as to the Turtle Bay farm, and as to that parcel directing a resale. From this order Delaplaine appealed to the chancellor, alledging in his petition of appeal as the ground thereof that the surrogate had confirmed a part and vacated the residue of said sale. The supreme court, in which the proceedings became vested under the new constitution, dismissed the appeal and affirmed the order of the surrogate. Delaplaine thereupon appealed to this court.

*M. Hoffman*, for appellant.

*W. B. Lawrence*, for respondents.

HARRIS, J. Upon receiving the return of an executor or administrator who has been authorized to sell real estate for the payment of debts, it is made the duty of the surrogate to examine the proceedings, with a view to determine whether the sale has been legally made and fairly conducted, and whether a greater sum can be obtained for the property sold. For this purpose, the statute authorizes him to examine the executor or administrator, or any other person he may think proper to examine, upon oath. Having made this examination, he is required to determine whether the sale shall be confirmed or vacated. The rule, by which he is to be governed in deciding this question, is prescribed by the statute. " If it shall appear to him that the sale was legally made and fairly conducted, and that the sum bid was not disproportionate to the value of the property sold, or if disproportionate, that a greater sum by at. least ten per cent can not be obtained, he shall make an order

confirming such sale and directing conveyances to be executed." (2 *R. S.* 105, § 30.) "If he shall be of opinion that the proceedings were unfair, or that the sum bid was disproportionate to the value, and that a sum exceeding such bid, at least ten per cent, exclusive of the expenses of a new sale, may be obtained, he shall vacate such sale, and direct that another be had." (2 *R. S.* 105, § 29.) Within these limits, the surrogate may be said to be vested with discretionary power. He alone is to judge of the kind and amount of evidence which will ena‧ ble him to decide. If "*in his opinion*" the amount to be realized for the creditors can be increased ten per cent by a resale, then it is made his duty to direct such resale. On the other hand, if "*it shall appear to him*" that upon a resale the amount realized would not be increased to that extent, then it is equally his duty to confirm the sale already made.

To what extent his decision may be the subject of review in an appellate court, it is not necessary now to determine. It has been held by the chancellor, upon a motion to dismiss the appeal in this case, that an appeal would lie from the order of the surrogate vacating the sale of the Turtle Bay farm. (10 *Paige*, 602.) The statute authorizes an appeal from any order, decree or sentence of the surrogate, except in certain specified cases. Upon such an appeal, it would undoubtedly be the duty of the court of review, to see that the surrogate had not transcended the power vested in him by statute. If it should appear that he had arbitrarily set aside a sale, without any evidence that the amount bid was disproportionate to the value of the property, or had confirmed a sale when the evidence that the amount specified in the statute might be obtained upon a resale was clear and uncontradicted, it would be the duty of the appellate court to reverse the order. On the other hand, where the decision depends upon the weight of evidence, and the importance to be attached to any particular circumstances in the case, I think it was the intention of the legislature that the opinion of the surrogate should be conclusive. But whatever may be the power of the appellate court to correct any erroneous opinion of the surrogate upon such a question, there is no necessity for

its exercise here.    There was abundant evidence before the sur
rogate to justify his conclusion that, upon a resale of the prop-
erty in question, the amount realized would be increased to the
extent specified in the statute.    And besides, he took the pre-
caution to secure this result, by taking a bond to that effect, and
also requiring a deposit in advance to the amount of the ten
per cent.    Admitting, therefore, that it is the province of this
court to review the grounds upon which the surrogate acted,
there can be no doubt that, so far as this question is concerned,
he acted judiciously.    He was right in holding, as he did, that
he was "bound by the express provision of the statute, and
could not confirm the sale."

But it is insisted that the statute regards the entire sale as
one transaction, and that the surrogate was not authorized to
vacate the sale of the Turtle Bay farm, and confirm the sale
of the residue of the property.    Such a construction of the stat-
ute would certainly be very inconvenient in practice, and I find
nothing in the terms of the law itself which requires its adop-
tion.    The whole tenor of the act relating to these sales, evi-
dently contemplates proceedings similar to those which take
place upon other judicial sales.    In all such sales, it is the well
known duty of the officer conducting them, to sell the property
in such parcels as shall be best calculated to secure the greatest
aggregate amount.    I can not doubt that this was the duty of
the administrator in this case.    If he had sold the forty-one par-
cels of land embraced in the order under which he acted, to-
gether, upon a single bid, there can be no doubt that it would
have been the duty of the surrogate to have disaffirmed the sale
on the ground that it was not legally made or fairly conducted.
I think, too, that the administrator, if he deemed it beneficial
to the estate, as he undoubtedly did, had a right to sell the Tur-
tle Bay farm, though in the order of sale it was described as a
single parcel, in separate lots.    It was for him to determine, in
the first instance, to what extent the property was susceptible
of judicious division.    Nothing short of palpable error or gross
abuse of his discretion would justify the surrogate in arresting
the sale upon this ground.

Freeman *v.* Cram.

In this case forty-one distinct parcels of real estate were directed to be sold. Of these thirty were in fact sold, as we are to presume, for their full value. One other was sold for a price so far disproportionate to its value, as to make it the duty of the surrogate to vacate the sale, unless the entire sale of the thirty-one lots is to be regarded as but one sale. There is nothing in the statute which requires the creditors of the estate to submit to an unnecessary sacrifice of one parcel of the land because a fair price has been paid for thirty others. The only sensible and practical construction to be given to the statute is that the criterion, which it has prescribed by which to determine whether a sale is to be confirmed or vacated, is to be applied, independently, to each distinct parcel sold. When any parcel has been fairly sold, and for an adequate price, the sale should be confirmed. If another parcel has been sold for an inadequate price, and the surrogate is satisfied that upon a resale ten per cent more can be realized, it is his duty to vacate the sale, whatever else may be done, in respect to the other property sold.

Upon the merits, therefore, the order of the surrogate was right. Of course it is unnecessary to examine the questions raised by the respondents upon the sufficiency of the appeal. The order of the supreme court should be affirmed with costs.

Order affirmed.